IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LAWRENCE HAMPTON,  #197002, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:16-CV-973-ECM-WC |
| | ) | |
| CAPTAIN BALDWIN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.    INTRODUCTION

This case is before the court on a 42 U.S.C. § 1983 complaint filed by Lawrence Hampton ("Hampton"), a state inmate, alleging violations of his constitutional rights at Draper Correctional Facility ("Draper") in December of 2016.  The defendants remaining in this case are Warden Edward Ellington ("Warden Ellington"), Captain Jeffery Baldwin ("Captain Baldwin"), and Officer Clifton Sanders ("Officer Sanders"), correctional officials working at Draper on the date of the incident (collectively "the correctional defendants"), and Nurse Michelle Sagers-Copeland ("Nurse Sagers-Copeland").

In the complaint and amendments thereto, Hampton challenges the constitutionality of force used against him by Officer Sanders on December 13, 2016 at Draper during a shakedown by members of the Certified Emergency Response Team (CERT) and the failure of Captain Baldwin to protect him from this use of force.  He also alleges Warden Ellington acted with deliberate indifference to his health by delaying his transfer to the healthcare unit for medical treatment for his injuries.  Finally, Hampton complains Nurse

Sagers-Copeland, the Health Services Administrator, provided inadequate medical treatment and denied him access to treatment for injuries suffered due to the challenged use of force.[1]  Hampton seeks a declaratory judgment, injunctive relief, i.e., that the court order CERT members to utilize a camera or be equipped with full body cameras any time they are deployed, and monetary damages for the alleged violations of his constitutional rights. Doc. 1 at 4.

The defendants filed answers, special reports, supplemental special reports and supporting evidentiary materials, including affidavits, prison reports and medical records, addressing Hampton's claims for relief.  In these documents, the defendants deny they acted in violation of Hampton's constitutional rights.  After receipt of all the defendants' reports, the court issued an order directing Hampton to file a response to the reports, including affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 144 at 2.  The order specifically cautioned Hampton that "**unless within fifteen (15) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response] and **without further notice to the parties** (1) treat the special reports and any supporting evidentiary materials as a . . . motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." Doc. 145 at 3.  Pursuant to

---

[1]Despite his initial assertions against Nurse Sagers-Copeland, which Hampton advises were presented in a document prepared by a jailhouse lawyer at Draper, he clarifies in an amendment to the complaint that the nurse "he talked to was not Nurse Copeland.  I did not see Nurse Michelle Sagers-Copeland" regarding my injuries.  Doc. 51 at 3.

this order, the court deems it appropriate to treat the special reports and supplemental special reports filed by the correctional and medical defendants as motions for summary judgment.

Upon consideration of the defendants' motions for summary judgment, the evidentiary materials filed in support thereof, the sworn complaint, and Hampton's affidavit in response to the special report, the court concludes that the correctional defendants' motion for summary judgment as to Hampton's allegations of excessive force and deliberate indifference to health and safety lodged against Captain Baldwin and Officer Sanders in their individual capacities is due to be denied.  The motion for summary judgment with respect to the remaining claims against the correctional defendants, including the deliberate indifference claim against Warden Ellington, is due to be granted. In addition, the motion for summary judgment as to the claims against the medical defendant, Nurse Sagers-Copeland, is due to be granted.

## II.    SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007); Fed. R. Civ. P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its

motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Beard v. Banks*, 548 U.S. 521, 529 (2006) (holding that court "must examine the record to see whether the [party moving for summary judgment], in depositions, answers to interrogatories, admissions, affidavits and the like, has demonstrated the absence of a genuine [dispute] of material fact, and his entitlement to judgment as a matter of law.") (internal citations and quotation marks omitted); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial).

At this juncture, the court "must determine whether [the plaintiff], who bears the burden of persuasion has by affidavits or as otherwise provided in Rule 56 . . . set forth specific facts showing that there is a genuine [dispute of material fact] for trial."  *Beard*, 521 U.S. at 529 (internal citations and quotation marks omitted); *Jeffery*, 64 F.3d at 593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of

perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact.). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when a party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor such that summary judgment is not warranted. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F.Supp.2d 1297, 1301 (M.D. Fla. 2011). "[T]he judge's function [when addressing summary judgment motion] is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine [dispute] for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).

However, at the summary judgment stage, the law requires that this court accept as true "statements in [the plaintiff's] verified complaint, sworn response to the officers' motion for summary judgment, and sworn affidavit attached to that response[.]" *Sears v. Roberts*, 2019 WL 1785355, *3 (11th Cir. April 24, 2019); *Anderson*, 477 U.S. at 255 (holding that when deciding whether to grant summary judgment a court must draw "all justifiable inferences in [the plaintiff's] favor."). "That [a plaintiff's] evidence consists

mainly of his own testimony in his verified complaint, sworn response, and sworn affidavit does not preclude a finding that a genuine dispute of material fact exists. 'As a general principle, a plaintiff's testimony cannot be discounted on summary judgment unless it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law, meaning it relates facts that could not have possibly been observed or events that are contrary to the laws of nature.'" *Sears*, 2019 WL 1785355 at *5 (quoting *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013)). The Supreme Court has acknowledged that a direct contradiction occurs where a videotape of the incident at issue clearly contradicts the plaintiff's version of events. *See Scott v. Harris*, 550 U.S. 372, 378–79 (2007).

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record. After this review, the court finds that Hampton, through the submission of his sworn complaint, affidavits in response to the defendants' special reports, and sworn response has demonstrated a genuine dispute of material fact in order to preclude entry of summary judgment on his claims of excessive force presented against  in their individual capacities.[2]  However, the correctional defendants are entitled to summary judgment on the remaining claims for monetary damages in their official capacities and the request for injunctive relief. Finally, Nurse Sagers-Copeland and Warden Ellington are entitled to summary judgment.

---

[2]"Even if [the] sworn statements [submitted by the plaintiff] turn out to be exaggerations or false, they are enough to raise a genuine issue of material fact about the amount of force [the officers] used and whether [they] applied it in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Sears*, 2019 WL 1785355 at *6 (internal quotation marks omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) and *Skrtich v. Thornton,* 280 F.3d 1295, 1303 (11th Cir. 2002)).

### III.    Relevant Facts[3]

During the evening of December 13, 2016, CERT officers entered Hampton's dormitory to conduct a search or shakedown of inmates. Hampton complied with the officers' orders by unlocking his box, pulling up and down his boxer shorts, and walking to an area downstairs with several other inmates.  After waiting for approximately 40 minutes, the officers ordered him to return to his bed and lie with his face down and his hands behind his back.

As Hampton began walking up the stairs, the officers confronted another inmate about contraband they found in the inmate's shoe.  When one of the officers grabbed the inmate and began pulling him toward the stairs, several inmates cautioned the officer that the inmate had a health problem.  The officer, however, screamed and cursed and ordered the inmates to go to their beds.  Hampton complied and lay face down on his bed.

Immediately after the officer ordered the inmates to return to their beds, another officer ran upstairs and ordered everyone in the dorm to lie down.  Hampton heard the officers beating other inmates.  Hampton remained still.  At that time and without provocation, Officer Sanders struck him across the back, knocking him partially off the bed.  Hampton asked what he did wrong and felt a sharp pain along the back of his ribcage. As he turned, he saw Officer Sanders standing above him, gripping a stick with both hands. Captain Baldwin did not intervene to stop the officers from striking Hampton or the other inmates.  At some point, another officer helped Hampton onto the bed.

---

[3]  At this stage of the proceedings, the court must construe the facts in favor of the plaintiff.  See *Bradley v. Franklin Collection Service, Inc.*, 739 F.3d 606, 608 (11th Cir. 2014).

Shortly thereafter, one of the correctional officers allowed Hampton and a few other injured inmates to leave their beds to seek assistance. Hampton went to Warden Ellington and told him what happened. Warden Ellington instructed Hampton and the other inmates to wait in the barbershop and advised that he would find someone to take them to the medical unit. After waiting between forty-five minutes to an hour, Hampton pleaded with Warden Ellington for help and told him that he thought his ribs were broken. At that time, Warden Ellington arranged for Hampton to be treated by medical personnel.

## IV.   DISCUSSION

### A.   Absolute Immunity

To the extent Hampton lodges claims seeking monetary damages against the correctional defendants in their official capacities, Warden Ellington, Captain Baldwin, and Officer Sanders are entitled to absolute immunity. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).

> "[T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]." *Alabama v. Pugh*, 438 U.S. 781, 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 131 S.Ct. 1632, 1637–38, 179 L.Ed.2d 675 (2011). "A State's consent to suit must be 'unequivocally expressed' in the text of [a] relevant statute." *Sossamon v. Texas*, 563 U.S. 277, 131 S.Ct. 1651, 1658, 179 L.Ed.2d 700 (2011) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)). "Waiver may not be implied." *Id*. Likewise, "Congress' intent to abrogate the States' immunity from suit must be obvious from 'a clear legislative statement.'" *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (quoting *Blatchford v. Native Vill. of Noatak*, 501 U.S. 775, 786, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991)).

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015).  Thus, a state official

may not be sued in his official capacity unless the state has waived its Eleventh Amendment

immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984),

or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S.

44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states
> that "the State of Alabama shall never be made a defendant in any court of
> law or equity." Ala. Const. art. I, § 14.  The Supreme Court has recognized
> that this prohibits Alabama from waiving its immunity from suit.  *Pugh,* 438
> U.S. at 782, 98 S.Ct. 3057 (citing Ala. Const. art. I, § 14.)

*Selensky*, 619 F. App'x at 849.  "Alabama has not waived its Eleventh Amendment

immunity in § 1983 cases, nor has Congress abated it."  *Holmes v. Hale*, 701 F. App'x 751,

753 (11th Cir. 2017) (citing *Carr v. City of Florence*, Ala., 916 F.2d 1521, 1525 (11th Cir.

1990)).  In light of the foregoing, the correctional defendants are entitled to sovereign

immunity under the Eleventh Amendment from the request for monetary damages from

them in their official capacities. *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*,

157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official

capacities are protected from suit for damages under the Eleventh Amendment); *Edwards*

*v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages

are unavailable from state official sued in his official capacity).

> **B.    Excessive Force and Failure to Protect**

(i)  Qualified Immunity.  As to the failure to protect and excessive force claims lodged by Hampton against Captain Baldwin and Officer Sanders in their individual capacities, the defendants argue they are entitled to qualified immunity.

> Under the doctrine of qualified immunity, if the defendant establishes that he was acting within the scope of his discretionary authority when the alleged excessive force occurred, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity.  *Skop* [*v. City of Atlanta*, 485 F.3d 1130, 1136–37 (11th Cir. 2007)].  To defeat qualified immunity, a plaintiff must show both that a constitutional violation occurred and that the constitutional right violated was clearly established.  *Fennell* [*v. Gilstrap*, 559 F.3d 1212, 1216 (11th Cir. 2009) (per curiam)].  In Eighth Amendment excessive force cases, however, "the subjective element required to establish [the constitutional violation] is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution."  *Johnson v. Breeden*, 280 F.3d 1308, 1321–22 (11th Cir. 2002).

*Bowden v. Stokely*, 576 F. App'x 951, 954–55 (11th Cir. 2014).  "Moreover, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance."  *Skrtich*, 280 F.3d at 1301.  "While . . . there is no per se rule barring qualified immunity in Eighth Amendment cases, where the plaintiff has sufficiently alleged or shown a material dispute of fact as to an excessive force claim, summary judgment based on qualified immunity is not appropriate."  *Bowden*, 576 F. App'x at 956 (citing *Skrtich*, 280 F.3d at 1301).  Accordingly, this court will consider whether the plaintiff's allegations that Officer Sanders maliciously and sadistically used excessive force against him while Captain Baldwin witnessed or authorized the force and failed to intervene, which the court must take as true for purposes of summary judgment, sets forth violations of his Eighth Amendment rights.

(ii) <u>Excessive Force</u>. Hampton asserts that Officer Sanders subjected him to excessive force. Claims of excessive force by correctional officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component. *Hudson*, 503 U.S. at 8. The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Id*. (internal quotations omitted). With respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id*. In addition, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Id*. at 4. "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).

> This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. [*Hudson*, 503 U.S.] at 7, 112 S.Ct. (1992). "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Ibid*. (quoting *Whitley [v. Albers*, 475 U.S. 312, 321 (1986))]. The extent of injury may also provide some indication of the amount of force applied.

*Wilkins*, 559 U.S. at 37. "The relatively modest nature of [an inmate's] alleged injuries will no doubt limit the damages he may recover [if ultimately successful]." *Id*. at 40.

Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320–21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7–8, 112 S.Ct. 995; *see also Whitley*, 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skrtich*, 280 F.3d at 1300-01; *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007) (In determining whether officers used force maliciously and sadistically, a court must "look at the need for the application of force; the relationship between the need and the amount of force that was used; and the extent of the injury inflicted upon the prisoner[;] the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response.  Not only that, but we must also give a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance.") (internal quotation marks and citations omitted).

"When prison officials maliciously and sadistically use force to cause harm," the Court recognized, "contemporary standards of decency always are violated . . . whether or not significant injury is evident.  Otherwise, the Eighth Amendment would permit any physical punishment, no matter how

> diabolic or inhuman, inflicting less than some arbitrary quantity of injury."
> *Hudson*, 503 U.S. at 9, 112 S.Ct. at 995[.]"

*Wilkins*, 559 U.S. at 38.  Thus, in an excessive force case such as the one at hand,

> the "core judicial inquiry" is "not whether a certain quantum of injury was
> sustained, but rather whether force was applied in a good-faith effort to
> maintain or restore discipline, or maliciously and sadistically to cause harm."
> *Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S.Ct. 1175, 1178, 175 L.Ed.2d 995
> (2010) (per curiam) (quotation marks omitted) (concluding that a gratuitous
> beating by prison guards, even without injuries requiring medical attention,
> violated a prisoner's Eighth Amendment rights)."

*Bowden*, 576 F. App'x at 953.  Thus, the focus of this court in an "Eighth Amendment inquiry [as to excessive force] is on the nature of the force applied, not on the extent of the injury inflicted."  *Sears*, 2019 WL 1785355, at *3.

Hampton alleges that on December 13, 2016, Officer Sanders used excessive force against him.  In support of this claim, Hampton contends that Officer Sanders, without reason or warning, struck him across the back with a stick with such force that he suffered a rib fracture.

The defendants deny Hampton's claims regarding the use of excessive force. Officer Sanders denies using excessive force against Hampton and Captain Baldwin maintains that he did not witness any officers use any force.  The defendants assert that they do not know Hampton and were unaware of the incident.  They deny violating Hampton's constitutional rights with respect to the force used against him.

Even though the correctional defendants dispute the version of events presented by Hampton, the court is required at this stage of the proceedings to view the facts in the light most favorable to Hampton and draw all reasonable inferences from those facts in his favor.

*Bradley v. Franklin Collection Service, Inc.*, 739 F.3d 606, 608 (11th Cir. 2014); *Sears*, 2019 WL 1785355, at *3-4. In that vein, Hampton provides that Officer Sanders undertook actions against him – i.e., striking him with a stick and knocking him partially off the bed – without provocation and while he posed no threat to them or the security of the facility. Hampton asserts that the challenged actions caused him to suffer injuries to his ribs. In sum, Hampton contends that he was subjected to an unprovoked attack under circumstances that did not warrant the amount of force used which violated his constitutional rights. *See*, *Bowden*, 576 F. App'x at 954.

As previously explained, the defendants deny Hampton's allegations regarding the use of excessive force and maintain that they are unaware of any incident related to Hampton which occurred on the evening of December 13, 2016. The defendants also deny witnessing any use of excessive force against Hampton. Nevertheless, viewing the facts in the light most favorable to Hampton, the court concludes that the defendants are not entitled to qualified immunity as the plaintiff has alleged facts sufficient to survive their motion for summary judgment regarding the excessive force claim lodged against them in their individual capacities. *See Skrtich*, 280 F.3d at 1301. Specifically, disputed issues of material facts exist regarding the need for the use of force, the nature of the force used, whether Officer Sanders acted "maliciously and sadistically" to cause harm. Consequently, the motion for summary judgment with respect to the claims of excessive force lodged against Officer Sanders in his individual capacity for monetary damages is due to be denied.

(iii)    Deliberate Indifference – Failure to Protect

14

Hampton complains that Captain Baldwin failed to intervene on his behalf to stop the alleged acts of excessive force inflicted by CERT officers occurring in front of him and under his supervision. "A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994) (internal quotations and citations omitted). Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's safety when the official knows the inmate faces "a substantial risk of serious harm" and with this knowledge disregards the risk by failing to take reasonable measures to abate it. *Id*. at 828. A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Cottone v. Jean*, 326 F.3d 1352, 1358 (11th Cir. 2003). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 at 834. "Within [a prison's] volatile 'community,' prison administrators are to take all necessary steps to ensure the safety of . . . the prison staff and administrative personnel. . . . They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates themselves." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984).

The law requires establishment of both objective and subjective elements to demonstrate an Eighth Amendment violation. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014). With respect to the requisite objective elements of a

deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed].  Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh*, 268 F.3d at 1028–29.  As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . .  The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'  . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."  *Farmer*, 511 U.S. at 837–38.  *See Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (*citing Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . .  It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]"  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'"  *Farmer*, 511 U.S. at 834–38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324–25, 115 L.Ed.2d 271 (1991). . . .  Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists — and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . . Each individual Defendant must be judged separately and on the basis of what that person knew at the time of the incident." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). "The known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotation marks omitted). Moreover, "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Id.*

"Prison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence. . . . However, in order for liability to attach, the officer must have been in a position to intervene." *Terry v. Bailey*, 376 F. App'x 894, 896 (11th Cir.2010) (citing *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998)). The plaintiff has the burden of showing that the defendant was in a position to intervene but failed to do so. *Ledlow v. Givens*, 500 F. App'x 910, 914 (11th Cir. 2012) (citing *Hadley v. Gutierrez*, 526 F.3d 1324, 1330–31 (11th Cir. 2008)).

Consequently, to survive the properly supported motion for summary judgment filed by the correctional defendants, Hampton must first demonstrate an objectively substantial risk of serious harm existed to him prior to the altercation with the other inmates and "that the defendant[s] disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014), *citing*

*Caldwell*, 748 F.3d at 1100.  If he establishes these objective elements, Hampton must then satisfy the subjective component.  To do so, Hampton "must [show] that the defendant[s] subjectively knew that [Hampton] faced a substantial risk of serious harm. The defendant[s] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. (internal citation omitted).

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm.  *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).  In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a "***particular threat or fear felt by [the] [p]laintiff***."  *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003) (emphasis added).  Moreover, the defendant-official "must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists — and the prison official must also draw that inference."  *Id*. at 1349 (quotations omitted).

*Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005) (emphasis in original).

The pleadings filed by Hampton indicate that Captain Baldwin viewed the use of force without intervening to protect him.  Specifically, Hampton alleges that Captain Baldwin acted with deliberate indifference to his safety by failing to intervene during his supervision of the CERT officers.  He alleges that Captain Baldwin observed the officers assaulting the inmates and did nothing to stop Officer Sanders from striking him.  Captain Baldwin, however, denies Hampton's claims regarding the alleged failure to protect Hampton and maintains that he did not witness any officers use force against him.  Thus, a genuine dispute of material fact exists regarding whether Captain Baldwin failed to intervene when faced with circumstances which warranted intervention.  Viewing the facts

in the light most favorable to Hampton, the court concludes that Captain Baldwin is not entitled to qualified immunity as Hampton has alleged facts sufficient to survive the motion for summary judgment regarding the failure to protect claim lodged against him in his individual capacity.  *See Skrtich*, 280 F.3d at 1301.

### C.    Deliberate Indifference to Medical Needs

(i)    <u>The Medical Defendant</u>

In his initial complaint, Hampton alleges Nurse Sagers-Copeland acted with deliberate indifference to his medical needs because she prevented him from receiving medical attention by failing to provide a sick call form. Doc. 1.  Despite these allegations, the undisputed medical records refute Hampton's deliberate indifference claim arising from the treatment he received for injuries suffered on December 13, 2016.

To prevail on a claim concerning an alleged denial of medical treatment, an inmate must—at a minimum—show that the defendant acted with deliberate indifference to a serious medical need.  *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989).  Medical personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (holding, as directed by *Estelle*, that inmate must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment").

Under well settled-law, neither medical malpractice or negligence equate to deliberate indifference:

> That medical malpractice—negligence by a physician—is insufficient to form the basis of a claim for deliberate indifference is well settled. *See Estelle v. Gamble,* 429 U.S. 97, 105–07, 97 S. Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir. 1995). Instead, something more must be shown. Evidence must support a conclusion that a prison [medical care provider's] harmful acts were intentional or reckless. *See Farmer v. Brennan,* 511 U.S. 825, 833–38, 114 S. Ct. 1970, 1977–79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams,* 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. DeKalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz,* 168 F.3d 949, 955 (7th Cir. 1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

In order to establish "deliberate indifference to [a] serious medical need . . ., Plaintiff[] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009). When seeking relief based on deliberate indifference, an inmate is required to show "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (holding that, for liability to attach, the official must know of and then disregard an excessive risk of harm to the prisoner). Regarding the

objective component of a deliberate indifference claim, the plaintiff must first show "an objectively serious medical need[] . . . and second, that the response made by [the defendant] to that need was poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligen[ce] in diagnos[is] or treat[ment], or even [m]edical malpractice actionable under state law." *Taylor*, 221 F.3d at 1258 (internal quotation marks and citations omitted).  To proceed on a claim challenging the constitutionality of medical care "[t]he facts alleged must do more than contend medical malpractice, misdiagnosis, accidents, [or] poor exercise of medical judgment." *Daniels v. Williams*, 474 U.S. 327, 330–33 (1986); *Estelle*, 429 U.S. at 106 (holding that neither negligence nor medical malpractice "become[s] a constitutional violation simply because the victim is incarcerated."); *Farmer*, 511 U.S. at 836 (observing that a complaint alleging negligence in diagnosing or treating "a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment[,]" nor does it establish the requisite reckless disregard of a substantial risk of harm so as to demonstrate a constitutional violation.); *Kelley v. Hicks*, 400 F.3d 1281, 1285 (11th Cir. 2005) (holding that "[m]ere negligence . . . is insufficient to establish deliberate indifference."); *Matthews v. Palte*, 282 F. App'x 770, 771 (11th Cir. 2008) (affirming district court's summary dismissal of inmate's complaint because "misdiagnosis and inadequate treatment involve no more than medical negligence.").

> In articulating the scope of inmates' right to be free from deliberate indifference, . . . the Supreme Court has . . . emphasized that not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle,* 429 U.S. at 105, 97 S. Ct. at 291; *Mandel* [*v. Doe,* 888 F.2d 783, 787 (11th Cir. 1989)].  Medical treatment

> violates the eighth amendment only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rogers*, 792 F.2d at 1058 (citation omitted).  Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S. Ct. at 292 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Mandel*, 888 F.2d at 787–88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop*, 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference).  Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).  "[A]s *Estelle* teaches, whether government actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545 (internal quotation marks and citation omitted).  Moreover, the law is clear that "[a] difference of opinion as to how a condition should be treated does not give rise to a constitutional violation." *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (holding that mere fact an inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution).

Nurse Sagers-Copeland, the Health Services Administrator at Staton Correctional Facility, submitted affidavits and medical records, addressing the deliberate indifference claim presented by Hampton.  Doc. 37-1.  The details of medical treatment provided to Hampton as set forth by Nurse Sagers-Copeland are corroborated by the objective medical

records contemporaneously compiled during the treatment process.   Nurse Sagers-Copeland provides the following information in response to the complaint:

> Mr. Hampton was initially seen in the health care unit at 12:50 p.m. [on December 13, 2016].  Mr. Hampton was seen and evaluated by the nurse and a body chart was completed.  Mr. Hampton informed the nurse that he had been hit in the left side of the ribs with a stick.  The nurse noted that Mr. Hampton had an abrasion on the left lower rib cage with no other injuries noted.  Mr. Hampton's vital signs were taken, all of which were normal.  Mr. Hampton was provided Ibuprofen by the nurse.

> Mr. Hampton was again seen in the health care unit on December 15, 2016.  A body chart was also performed at that time.  The nurse who performed the body chart indicated that Mr. Hampton had a swollen left upper rib cage and that Mr. Hampton complained that it hurt to move.  The nurse noted in the medical chart that an appointment was made for Mr. Hampton to be seen by a medical provider.  Mr. Hampton was again seen on December 16, 2016.  The medical provider noted that Mr. Hampton may possibly have fractured one of his left ribs.  Therefore, a chest x-ray was ordered.  Chest x-rays were in fact taken on December 16, 2016.  The chest x-rays were read by the radiologist as follows:

>> Examination:  Ribs bi-lat and chest min 4v

>> Results:  The bony ossification of the bilateral ribs is normal.

>> Mildly displaced right lateral tenth rib fracture.    No pneumothorax seen.

>> Conclusion:  Mildly displaced right lateral tenth rib fracture.

> An appointment was made for Mr. Hampton to be seen by a medical provider on December 20, 2016.  However, Mr. Hampton did not show up for his medical appointment.    The nurse noted on the Release of Responsibility form as follows:

>> No show for f/u appointment with provider re: x-ray of ribs along with pain and incentive spirometry.

> Further x-rays were taken of Mr. Hampton on December 23, 2016.  The radiologist read those chest x-rays as follows:

Examination:  Chest – I view (AP)

Results:    Clear lungs.    Normal cardiac size.    Grossly unremarkable   mediastinum.     Grossly   unremarkable mediastinum.  Grossly unremarkable osseous structures.

Conclusion:  Limited lung paremchymal detail.  No acute cardio pulmonary findings.

An addendum radiology report is also in Mr. Hampton's chart where it is noted that "mildly displaced left tenth rib is again noted."

A follow-up x-ray was thereafter taken of Mr. Hampton's ribs on January 3, 2017.  The radiologist read those x-rays as follows:

Examination:  Chest – 2 view (AP and Lat).
Results:     Cardiac  size  is  normal  with  a  normal cardiomediastinal silhouette.  Hilar countours are also normal. Pulmonary parenchyma is clear and well-expanded.  There is no pleural effusion, mass, atelectasis, or consolidation.  No bony or soft tissue abnormalities are identified.  There has been no significant interval change since a prior examination dated 12/23/2016.
Conclusion:  Negative chest x-ray.

An addendum radiology report is also in Mr. Hampton's chart dated January 3, 2017.  The addendum states: "Addendum:  The tenth rib fracture seen on 12/23/2016 is still present."

Mr. Hampton  was  seen  for  follow-up  evaluations  by  medical providers on January 5, 2017 and January 13, 2017.  At no time have Mr. Hampton's medical needs been delayed and/or denied.

Subsequent to Mr. Hampton's altercation with correctional officers on December 13, 2016, he has received multiple chest x-rays and has been seen and followed up by the medical staff at the health care unit at the Staton Correctional  Facility.    Mr.  Hampton's  condition  has  been  followed continuously since December 13, 2016.  Although I have . . . at no time provided nursing care to Mr. Hampton, it is my opinion that the nursing care provided to Mr. Hampton subsequent to his altercation with correctional officers on December 13, 2016, has always been within the standard of care of nurses practicing nursing in the state of Alabama.

> At the Staton/Draper Correctional Facilities, there is a grievance procedure for all inmates dissatisfied with the medical treatment provided to them at the health care unit at the Staton Correctional Facility…. At no time did Mr. Hampton ever file any grievances for medical services provided him subsequent to his altercation with correctional officers on December 13, 2016.
>
> I am aware of the complaints made by Mr. Hampton against myself. Specifically, I am aware that Mr. Hampton makes claims against me with regard to the medical treatment provided to him prior to an altercation with correctional officers on December 13, 2016.  At no time did I have any contact or communications with Mr. Hampton subsequent to his altercation with correctional officers on December 13, 2016. . . .

Doc. 37-1.

Under the circumstances of this case, the court finds that the course of treatment undertaken by Nurse Sagers-Copeland did not violate Hampton's constitutional rights. Specifically, there is no evidence upon which the court could conclude that Nurse Sagers-Copeland acted in a manner that was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris*, 941 F.2d at 1505 (internal quotation marks and citation omitted).  Rather, the evidence before the court demonstrates that medical personnel evaluated Hampton after the December 13, 2016, incident, prescribed medication to him in accordance with their professional judgment, and ordered x-rays to assist in their assessment and treatment of his injuries. Doc. 37-1. Whether medical personnel "should have [utilized] additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545 (internal quotation marks and citation omitted).  Additionally, neither negligence in diagnosis or treatment nor medical malpractice constitute deliberate indifference

actionable in a § 1983 case. *Farmer*, 511 U.S. at 836; *Taylor*, 221 F.3d at 1258; *Matthews*, 282 F. App'x at 771.   Furthermore, an inmate's desire for some other form of medical treatment than that prescribed does not constitute deliberate indifference violative of the Constitution. *Hamm*, 774 F.2d at 1505; *Franklin*, 662 F.2d at 1344 (holding that simple divergence of opinions between medical personnel and inmate-patient do not violate the Eighth Amendment).

Hampton's self-serving assertion of deliberate indifference does not create a question of fact in the face of contradictory, contemporaneously created medical records. *Whitehead*, 403 F. App'x 401, 403 (11th Cir. 2010); *Scott*, 550 U.S. at 380 (where a party's story "is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").   Moreover, Hampton has failed to present any evidence showing Nurse Sagers-Copeland knew that the manner in which she provided treatment created a substantial risk to his health and with this knowledge consciously disregarded the risk. Indeed, Hampton admits that "the nurse I talked to was not nurse Copeland and I did not see [her] at all that day." Doc. 51, at 3.   The record is therefore devoid of evidence showing that Nurse Sagers-Copeland acted with deliberate indifference to Hampton's medical needs, and summary judgment is therefore due to be granted in her favor.

(ii)   <u>Warden Ellington</u>

Hampton asserts that Warden Ellington acted with deliberate indifference to his health by delaying his transport to the healthcare unit.

Correctional personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (holding, as directed by *Estelle*, that a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment"). In determining whether a delay in medical treatment constituted deliberate indifference, the court considers the seriousness of the medical need, whether the delay worsened the medical condition, and the reason for the delay. *See Goebert v. Lee County, Fla.*, 510 F.3d 1312, 1327 (11th Cir. 2007); *Farrow v. West*, 320 F.3d 1235, 1247 (11th Cir. 2003). Additionally, when an inmate complains that a delay in medical treatment rises to the level of a constitutional violation, he "must place verifying medical evidence in the record" which establishes the detrimental effect caused by the delay to succeed on his claim. *Surber v. Dixie County Jail*, 206 F. App'x 931, 933 (11th Cir. 2006) (internal citation omitted).

The law is well settled that establishment of both objective and subjective elements are necessary to demonstrate an Eighth Amendment violation. *Caldwell*, 748 F.3d at 1099. With respect to the requisite objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028-29 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). As to the subjective elements, "the official must

both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference [. . .].  The Eighth Amendment does not outlaw cruel and unusual conditions; it outlaws cruel and unusual punishments [. . .].  [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837–38 (internal quotation marks omitted); *Campbell v. Sikes,* 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety [. . .].  It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference [. . .].  Each individual Defendant must be judged separately and on the basis of what that person [knew at the time of the incident]." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).  Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (internal quotation marks and citations omitted).

In this case, the court finds that the forty-five minute to one-hour delay from the time Hampton initially requested medical treatment and his transport to the health care unit was not a violation of Hampton's constitutional rights. Specifically, there is no evidence indicating that Warden Ellington was aware of the seriousness of Hampton's injury when he first requested treatment. Moreover, Hampton's allegations indicate that, when he asked a second time for the warden's assistance and showed him his injuries, Warden Ellington instructed prison officials to take Hampton to the healthcare unit. Furthermore, nothing in the record indicates that his condition worsened as the result of the momentary delay. Finally, Hampton has failed to present any evidence showing that Warden Ellington knew that the short delay in transporting him to the healthcare unit created a substantial risk to his health and with this knowledge consciously disregarded the risk. The record is therefore devoid of evidence – significantly probative or otherwise – showing that Warden Ellington acted with deliberate indifference in obtaining medical treatment for Hampton. For the foregoing reasons, summary judgment is due to be granted in favor of Warden Ellington.

## V. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The correctional defendants' motion for summary judgment with respect to the plaintiff's claims seeking monetary damages from them in their official capacities be GRANTED and these claims be DISMISSED with prejudice as Warden Ellington, Captain Baldwin, and Officer Sanders are entitled to absolute immunity from such damages.

2.  The motion for summary judgment filed on behalf of the correctional defendants in their individual capacities as to the plaintiff's excessive force claim against Officer Sanders and the failure-to-protect claim against Captain Baldwin be DENIED.

3. Warden Ellington's motion for summary judgment be GRANTED.

4.  Nurse Sagers-Copeland's motion for summary judgment be GRANTED.

5. This case be referred back to the undersigned for an evidentiary hearing on the plaintiff's surviving claims of excessive force against Officer Sanders and failure to protect against Captain Baldwin for monetary damages in their individual capacities.

On or before June 24, 2019, the parties may file objections to the Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this the 17th day of June, 2019.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
CHIEF UNITED STATES MAGISTRATE JUDGE