IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LAWRENCE HAMPTON, #197002, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIV. ACT. NO. 2:16-CV-973-ECM-WC |
| | ) [WO] |
| | ) |
| CAPTAIN BALDWIN, in his | ) |
| individual capacity also known as | ) |
| JEFFERY BALDWIN, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.   INTRODUCTION**

This 42 U.S.C. 1983 action is before the court on a complaint filed *pro se* by Lawrence Hampton ("Hampton" or "the plaintiff") challenging the constitutionality of actions that occurred in December of 2016 during his imprisonment in Draper Correctional Facility. On July 15, 2019, the Court entered summary judgment for Defendants on all claims except the excessive force claim brought against Officer Clifton Sanders ("Officer Sanders"), a correctional officer and member of the Northern Central Certified Emergency Response (CERT) team, and a failure to protect claim brought against Captain Jeffery Baldwin ("Captain Baldwin"), the commander of the Northern Central CERT team and Officer Sanders' supervisor at all times relevant to the Complaint. Doc. 152. The Court, therefore, terminated all defendants except Officer Sanders and Captain Baldwin.

The undersigned Magistrate Judge conducted an evidentiary hearing on August 6, 2019, *see* 28 U.S.C. 636(b)(1)(B), regarding Hampton's remaining excessive force and failure to protect claims.[1]  The challenged use of force occurred during a shakedown by the CERT team on or around December 13, 2016.  After careful consideration of the evidentiary hearing testimony and the exhibits previously submitted by the parties, the undersigned recommends that judgment should be entered in favor of Plaintiff on the excessive force claim against Officer Sanders but in favor of Captain Baldwin on the failure to protect claim lodged against him.

## II.  EVIDENTIARY HEARING

### A.  Issues

The evidentiary hearing proceeded on the following issues: (1) whether Officer Sanders subjected Hampton to an unprovoked and malicious use of force by striking him across the back with a heavy stick with such force that he fractured a rib; and (2) whether Captain Baldwin observed any act of excessive force and failed to protect Hampton from the use of force.  As evidentiary support for his claims, Hampton relies on his own testimony.  Defendants presented their own testimony in their defense.  The parties also referenced various evidentiary materials and pleadings previously filed with the Court as exhibits and contained within the record of this case.

---

[1] None of the parties filed a jury demand.

## B. Relevant Testimony and Evidence

Hampton testified that, on December 13, 2016, CERT officers conducted a search and shakedown of inmates in his dormitory. During the shakedown, an officer had an altercation with another inmate. When several inmates cautioned the officer that the inmate had a colostomy bag, an officer yelled at them to return to their beds. Hampton complied. While he lay face down on his bed, Hampton heard another CERT officer yelling at the inmates. Without provocation, Officer Sanders struck Hampton across the back and armpit area, knocking him partially off the bed. Hampton thought the officer was trying to kill him. As he turned and "balled up" into the fetal position, Hampton saw Officer Sanders holding a baton next to his bed. Another officer removed Officer Sanders from the area. Later that day, Hampton sought medical assistance.

Hampton consistently reported to medical personnel that he had been struck by a stick during a shakedown. The medical records show that Hampton presented to the health care unit at 12:50 p.m. on December 13, 2016, reporting that he had been hit on the left side with a stick and complaining of acute pain which worsened upon taking a breath. The nurse noted that Hampton had an abrasion along the left lower ribcage. On December 15, 2016, he returned to the health care unit and reported that the riot team had hit him with a stick, that the pain scale was a 10 on a scale of 10, and that it hurt to move. The nurse noted that Hampton had a swollen left upper ribcage. Upon conducting a bilateral x-ray of Hampton's ribcage on December 16, 2015, a radiologist concluded Hampton had a "mildly displaced right lateral 10th rib fracture." A health professional subsequently

ordered that Hampton should be restricted from lifting and pulling for eight weeks. On December 18, 2016, Hampton submitted a sick call slip to medical personnel, complaining that he continued to suffer pain, paranoia, and back problems after his ribcage was struck by a member of the riot squad. On or around January 3, 2017, additional x-rays were conducted, and a radiologist concluded that the left tenth rib fracture was still present.

At the time of the incident about which Hampton complains, Defendants served as members of the Northern Central Region CERT team. Officer Sanders testified that, on the evening of December 13, 2016, he participated in a normal shakedown procedure and that there were no physical altercations with any inmates at Draper Correctional Facility. He also stated that he neither knows Hampton nor does he recall seeing him at any time before the day of the hearing.

Captain Baldwin testified that the Central Region CERT team organized the entire shakedown and that his team, the Northern Central CERT team, assisted in the operation. Captain Baldwin stated that no incidents of excessive force or altercations occurred. He acknowledged that, as a supervisor of his team, he acted as a rover between different parts of the facility.

Despite there being opportunities for exaggeration when responding to questions posed by the Court, Hampton did not do so. For example, he acknowledged that, although he knew Captain Baldwin was a supervisor, he could not be certain whether he was nearby at the time of the incident. He also testified that Officer Sanders struck him no more than two times. Moreover, his testimony regarding the circumstances surrounding the

shakedown, including another officer's altercation with an inmate wearing a colostomy bag and the yelling of officers and inmates, remained consistent. In addition, Hampton's physical description of the CERT officer's appearance as alleged in his pleadings and testimony fits the description of Officer Sanders. *See* Doc. 51 at 1.

### III.   DISCUSSION

#### A. Excessive Force Standard

Claims of excessive force by correctional officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Id*. (internal quotations omitted). With respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id*. In addition, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Id*. at 4. "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).

> This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. [*Hudson*, 503 U.S.] at 7, 112 S.Ct. (1992).

5

> "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Ibid*. (quoting *Whitley [v. Albers*, 475 U.S. 312, 321 (1986))]. The extent of injury may also provide some indication of the amount of force applied.

*Wilkins*, 559 U.S. at 37. "The relatively modest nature of [an inmate's] alleged injuries will no doubt limit the damages he may recover [if ultimately successful]." *Id*. at 40.

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320–21, 106 S. Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7–8, 112 S. Ct. 995; *see also Whitley*, 475 U.S. at 321, 106 S. Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S. Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skrtich*, 280 F.3d at 1300-01; *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007) (In determining whether officers used force maliciously and sadistically, a court must "look at the need for the application of force; the relationship between the need and the amount of force that was used; and the extent of the injury inflicted upon the prisoner[;] the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response. Not only that, but we must also give a wide range of deference to

6

prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance.") (internal quotation marks and citations omitted).

> "When prison officials maliciously and sadistically use force to cause harm," the Court recognized, "contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Hudson*, 503 U.S. at 9, 112 S.Ct. at 995[.]"

*Wilkins*, 559 U.S. at 38. Thus, in an excessive force case such as the one at hand,

> the "core judicial inquiry" is "not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S.Ct. 1175, 1178, 175 L.Ed.2d 995 (2010) (per curiam) (quotation marks omitted) (concluding that a gratuitous beating by prison guards, even without injuries requiring medical attention, violated a prisoner's Eighth Amendment rights)."

*Bowden*, 576 F. App'x at 953. Thus, the focus of this Court in an "Eighth Amendment inquiry [as to excessive force] is on the nature of the force applied, not on the extent of the injury inflicted." *Sears v. Roberts*, 922 F.3d 1199, 1205 (11th Cir. 2019) (citing *Wilkins*, 559 U.S. at 37-38).

## B. Analysis

After listening to each of the witnesses and duly considering all of the evidence, the undersigned finds that the testimony provided by Hampton regarding the disputed events is the most credible.[2] The credible evidence before the Court corroborates Hampton's

---

[2] The demeanor of Hampton indicated forthrightness and believability. Officer Sanders, however, gave only general testimony regarding the shakedown and could not elaborate about the details. Defense counsel

7

testimony regarding the absence of any need for the use of force by Officer Sanders and the use of excessive force by this officer. Specifically, Hampton's testimony establishes that, after a disturbance in which other inmates in the dorm cautioned an officer about an inmate's colostomy bag and CERT officers began yelling at the inmates to get on their beds, Hampton complied with the officers' orders by lying face down on his bed. At that time, Officer Sanders, absent justification, struck Hampton across his rib cage with a baton. Hampton did not pose a threat to the security of the prison. In addition, the undisputed medical records indicate that Hampton suffered a fractured rib. Although Defendants maintain that no incidents of excessive force happened, the undersigned does not find the testimony to be entirely credible. Captain Baldwin admitted that he was a rover and,

---

placed great emphasis on inconsistencies between Hampton's allegations in his complaint and amendments thereto, in which Hampton stated the officer struck him with a wooden stick or a metal rod or the blunt end of an object. Given that Hampton was lying face down at the time the officer struck him with such force that he suffered a fracture, any inconsistencies between whether the object was made of wood or metal does not lessen Hampton's credibility. The court also notes that defense counsel's suggestion that some inmates harm themselves in order to bring lawsuits is unavailing in this instance given the location and the severity of the injury. Defense counsel further emphasized that Hampton listed different officers in his initial complaint but did not identify Officer Sanders as the CERT officer who struck him. Hampton testified, and the docket indicates, that when he learned that the "jailhouse lawyer" who assisted him in filing the initial pleadings had listed several people who were not involved, he filed motions to dismiss those defendants. Docs. 51, 132, and 135. He also explained that he recognized Officer Sanders as the officer who struck him and amended the complaint when he was provided photographs of CERT officers during discovery. This explanation is corroborated by the court record. While Hampton was imprisoned in the correctional facility, he listed numerous CERT officers and medical staff as defendants. Doc. 68. However, shortly after Hampton was transferred to Red Eagle Honor Farm in October 2018 and began reviewing the pleadings and evidentiary materials on his own without assistance, he filed a "motion to dismiss a lot of defendants." Doc. 132. Hampton filed this motion without being challenged or directed to do so by the Court. Thereafter, he filed a more specific motion to dismiss identifying the particular defendants to be dismissed and an amendment to the complaint asserting that the sole remaining claims were lodged against the Warden, the CERT supervisor, and Officer Sanders only. Docs. 134 and 135. Therefore, the undersigned finds Hampton's explanation for correcting the record to be credible.

therefore, may not have been present to view the use of excessive force by a CERT officer during the shakedown.  Furthermore, Hampton's consistent recollection of the events, including a disturbance regarding a colostomy bag and a confrontation with an inmate during a coordinated shakedown by the CERT team, appeared to be more credible than Officer Sanders' recollection that no incidents involving altercations with any inmates occurred.

Based on the foregoing, the undersigned finds that the evidence it deems credible corroborates Hampton's testimony regarding the lack of the need for the use of force and the use of excessive force by Officer Sanders.  Consequently, the undersigned concludes that Officer Sanders used force against Officer Sanders not in an attempt to maintain or restore discipline but rather maliciously and sadistically for the purpose of causing harm.

To the extent Captain Baldwin denies that he observed Officer Sanders use force against Hampton, the undersigned finds his testimony to be credible. Hampton's concession that Captain Baldwin may not have been present at the time he was struck and that he was not involved in the use of force against him is corroborated by Captain Baldwin's testimony that he was roving the dormitories throughout Draper at the time of the incident.  Thus, there is nothing establishing that Captain Baldwin failed to intervene to protect Officer Sanders from the use of excessive force.  Therefore, judgment should be granted in favor of Captain Baldwin on the failure to protect claim.

### C. Assessment of Damages

The remaining question before the undersigned concerns the amount of damages to which Hampton is entitled from Officer Sanders on the excessive force claim. The undisputed medical records indicate that Hampton suffered a mildly displaced right lateral tenth rib fracture, that he was restricted from lifting and pulling activities for eight weeks, and that he was treated with over-the-counter medications, such as Tylenol and Motrin, for the pain. During the evidentiary hearing, Hampton presented no evidence of any other injuries or treatment. Based on the foregoing, the undersigned recommends that Hampton should receive a total damage award of One Thousand Dollars ($1,000.00), as well as court costs taxed in the amount of $350.00, from Officer Sanders.

### IV. CONCLUSION

In sum, the credible evidence establishes that a constitutionally impermissible use of force was undertaken by Officer Sanders. There is no evidence, however, demonstrating that Captain Baldwin failed to intervene to protect Hampton from the unwarranted use of force.

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Judgment be entered in favor of Captain Baldwin and against Plaintiff on the failure to protect claim.

2. Judgment be entered in favor of Plaintiff and against Officer Sanders on the excessive force claim.

3. Plaintiff be awarded One Thousand Dollars ($1,000.00) in damages, for which Officer Sanders is liable in his individual capacity.

4. Court costs in the amount of $350.00 be taxed against Officer Sanders.

It is further

ORDERED that on or before **August 28, 2019**, the parties may file objections to the Recommendation. Any objections filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive, or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the Court and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) ("When the magistrate provides such notice and a party still fails to object to the findings of fact and those findings are adopted by the district court the party may not challenge them on appeal in the absence of plain error or manifest injustice."); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 14th day of August, 2019.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
CHIEF UNITED STATES MAGISTRATE JUDGE